UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


REGINA BEINLICH,

        Plaintiff

      v.                              C-1-06-748

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant


       This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 16), the plaintiff's objections (doc. no. 17), defendant's response (doc. no. 18) and plaintiff's reply (doc. no. 19).  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the defendant denying plaintiff's application for Supplemental Security Income ("SSI") .  In his Report and Recommendation which follows, the Magistrate Judge concluded that the defendant's decision denying plaintiff disability insurance benefits is  supported by substantial evidence and therefore recommended that the decision of the Commissioner be affirmed and this case be terminated on the docket of this Court.

2

REPORT AND RECOMMENDATION

This is a Social Security disability benefits appeal.  At issue is whether the administrative law judge ("ALJ") erred in finding plaintiff "not disabled" and therefore unentitled to a period of disability and disability income benefits.  (*See* Administrative Transcript ("Tr.") (Tr-11-20) (ALJ's decision).)[1]

## I.

On October 17, 2003, plaintiff filed an application for disability insurance benefits[2] alleging a disability onset date of November 15, 2001, due to neck, shoulder, back, and hip damage.  (*See* Tr. 48-50, 57)

Upon denial of her claims on the state agency level, she requested a hearing *de novo* before ALJ Gilbert Sheard.  A hearing was held on September 26, 2005, at which plaintiff appeared with counsel and testified.  (*See* Tr. 169-90).  A vocational expert, Ms. Janet Chapman, was also present and testified.  (Tr. 169, 172, 173).[3]

On December 28, 2005, the ALJ entered his decision finding plaintiff not disabled.  That decision became defendant's final determination upon denial of review by the Appeals Council on date  (Tr. 4-6).

---

[1]  This Court acknowledges that Plaintiff applied for SSI, not disability income benefits.

[2]  See Footnote 1.

[3]  Ms. Chapman presented further testimony at Tr. pp. 187-190 which this Court sets forth in its entirety later in this document.

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's adjustment disorder with depressed mood, degenerative joint disease in the shoulders, elbows, left hip, and low back degenerative disc disease are considered "sever impairments."

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the following residual functional capacity: less than the ful range of sedentary work as described in the body of the decision and in Exhibit 14 E.

6. The claimant is unable to perform any of her past relevant work.

7. The claimant is a "younger individual."

8. The claimant has a "high school (or high school equivalent) education."

9. The claimant's past relevant work was unskilled.

10. The claimant has the residual functional capacity to perform a significant range of sedentary work.

11. Although the claimant's exertional limitations do not allow her to perform a the full range of sedentary work, using Medical-Vocational Rule 201.27 as a framework for decision-making, there are a significant number of jobs in the economy that she could perform. Examples of such jobs include work as office clerk with 50 locally and 61,000 nationally, production worker with 50 locally and 57,000 nationally, and inspector/tester with 10 locally and 14,000 nationally.

12.    The claimant was not under a "disability" as defined in the Social Security Act at any time through the date of this decision.  20 CFR §§ 404.1520 (f) and 416.920 (f).

(Tr. 19.)

The ALJ concluded that plaintiff retains the capacity for work that exists in significant numbers in the economy and is not under a "disability" as defined in the Social Security Act, at any time through the date of this decision.  (Tr. 19)

On appeal, plaintiff argues that the ALJ erred in relying on the testimony of the vocational expert that was inconsistent with the classifications contained in the Dictionary of Occupational Titles ("DOT").

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform her past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform her past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform her past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## III.

For the only assignment of error, plaintiff maintains the ALJ improperly relied on testimony from the vocational expert (VE) that was inconsistent with the classifications in the DOT.  Thus, plaintiff maintains that the testimony of the VE cannot constitute "substantial evidence" in support of a decision of non-disability. .

SSR provides, in pertinent part, that:

> [o]ccupational evidence provided by a [vocational expert] or [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] or [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] or [vocational specialist] evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000).

7

As noted above, the ALJ found plaintiff capable of performing a reduced range of unskilled sedentary work. Based on plaintiff's RFC, the VE testified that there were a significant number of sedentary unskilled jobs that plaintiff could perform, including office clerk, production, and inspector/tester work. (Tr. 188.) The ALJ asked the VE whether there were any discrepancies between the positions described and the standards for those positions set for in the DOT, and the VE responded "no, Sir." (Tr. 189.)

Plaintiff, however, argues that there are Office Clerk, Inspector and Tester jobs listed in the DOT at the light and medium exertional level, and that no such job of "production worker" is listed. Thus, plaintiff asserts that the testimony of VE cannot constitute substantial evidence in support of a decision of non-disability and remand is necessary to resolve such conflicts.

In response, the Commissioner maintains that the DOT contains several sedentary, unskilled jobs representative of the work identified and described by the vocational expert, including Weight Tester, Atomizer Assembler, Lamp-Shade Assembler, Fishing-Reel Assembler, Dial Marker, and Tube Operator. Thus, the Commissioner maintains that the VE's testimony is in fact consistent with the sedentary, unskilled jobs listed in the DOT.

Here, consistent with the SSR 00-4p, the ALJ asked if there was a conflict. (Tr. 189). The vocational expert testified that there was not.  (*Id.*).  Plaintiff's counsel did not question the vocational expert with respect to the DOT and/or bring any inconsistencies to the ALJ's attention.  Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.  *Martin v. Commissioner of Social Security,* 170 Fed.Appx. 369, 374, 2006 WL 509393, **5 (6th Cir. 2006) Furthermore, even if there is a conflict between the expert's testimony and the DOT, "neither the DOT or [the expert's testimony] automatically trumps when there is a conflict."  *Id.*  (quoting SSR 00-4p.) . Here, the ALJ specifically asked if there was a conflict and the uncontradicted testimony of the vocational expert indicated that no conflict existed.

Moreover, the fact that some jobs listed by the vocational expert as sedentary are also listed as "light" work in the DOT is irrelevant.  *See Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir.1995).  In *Conn*, the expert described certain jobs as sedentary which the DOT classified as light or medium.  Nevertheless, the court held that "the ALJ may rely on the testimony of the vocational expert even if it is inconsistent with the job descriptions set forth in the Dictionary." *Id.* (the ALJ was within his rights to rely solely on the vocational expert's testimony).  The Social Security regulations do not require the Secretary or the expert to rely on classifications in the Dictionary of Occupational Titles.").  *Barker v. Secretary of Health and Human Svcs.*, 882 F.2d 1474, 1478 n. 1 (9th Cir.1989) (vocational expert can testify as to jobs which he described as light work even though same category of job was listed in DOT as requiring medium work).

Here, as noted above, the DOT contains several sedentary unskilled jobs representative of the work identified and described by the VE. Accordingly, the undersigned finds that the ALJ did not err at Step-Five in the sequential analysis.

For the foregoing reasons, plaintiff's assignment of error is without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

## *DE NOVO* REVIEW

Judicial review of the defendant's decision is limited in scope by 42 U.S.C. § 405(g). The Court's sole function under the statute is to determine whether there is substantial evidence to support the defendant's findings of no disability. The defendant's findings should stand if, after a review of the record in its entirety, the Court finds that the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Mullen v. Sec. of HHS*, 800 F.2d 535 (6th Cir. 1986); *Kirk v. Sec. of HHS*, 667 F.2d 524 (6th Cir. 1981), *cert. denied* 461 U.S. 957 (1983).

Plaintiff objects to Section III of the recommendation of the Magistrate Judge. Plaintiff argues that the ALJ erred in relying on the testimony of the vocational expert which was inconsistent with the classification contained in the Dictionary of Occupational Titles ("DOT").

Section III is a discussion of the ALJ's responsibilities as he or she considers Step 5 under the sequential evaluation system set forth under 20 CFR § 404.1520. At this stage of the proceedings, the ALJ has determined that the plaintiff has established a ***prima facie*** case of disability and the burden of going forward with the evidence shifts to the Commissioner to show there is work in the national economy which plaintiff may yet

10

perform in spite of her impairments.  *Lashley v. Secretary of HHS*, 708 F.2d 1048 (6th Cir. 1983).  The ALJ has the responsibility to make a finding supported by the substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Richardson v. Secretary of HHS*, 735 F.2d 962, 964 (6th Cir. 1984).  The ALJ must find and discuss specific evidence that proves plaintiff's individual capacity to perform the requirements of the relevant jobs.  When the grid is inapplicable, the testimony of a vocational expert is required to establish the availability of jobs that plaintiff can perform. *Born v. Secretary of HHD*, 923 F.2d 1168. 1174 (6th Cir. 1990).

The vocational expert, Ms. Chapman, testified.  (Tr. pps. 187-189).  Plaintiff had no objections "about her qualifications."  Ms. Chapman was asked if, in her opinion, there are substantial jobs in the economy plaintiff can do considering the way she is, age, education and background, and the fact she can do a full range of work with the limitations set out in Exhibit 14E of the Administrative Record.  Ms. Chapman testified as follows:

> EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:

> Q     Okay, Ms. Chapman, have you looked at the entire vocational file?

> A     Yes.

> Q     And have you had anything personally to do with Ms. Beinlich before today?

> A     No, I haven't.

> Q     I want to ask if in your opinion there are substantial [INAUDIBLE] jobs she can do in the economy under this hypothetical.  Take the way she is, age, education and background.  She can do a full range of work with the limitations set out in Exhibit 14E. Under this hypothetical do you have any jobs for her?

> A     If these were her limitations, yes, there would be jobs that she could perform. They would be at the sedentary, unskilled level.  Examples of such work would be that of office clerk, of which there's 50 locally, and that's the Huntington labor market, and 61,000

11

nationally.  Additionally, there would be production work at the sedentary, unskilled level also.  Approximately 50 locally and 57,000 nationally.  There would be surveillance system monitor work.

Q      Excuse me, temporarily let's skip over that one.  Do you have a fourth one?

A      Okay, there would be inspectors or testers, only 10 of these locally, but 14,000 nationally.

Q      Okay, well that's enough numbers there.  What does a sedentary unskilled office clerk do?

A      This is an individual who works under a more skilled clerical workers, typically, would be perhaps preparing mailing, perhaps sorting incoming mail, collating, documentation preparation.

Q      What does sedentary, unskilled production worker do?

A      This is an individual who may be assembling small items, cosmetics for example or other small utensils for shipment out.

Q      What does sedentary unskilled inspector/tester do?

A      This individual would use either a fixed gauge or would weigh finished products to be sure they meet production requirements.

Q      Okay, do all the jobs meet all the limitations in the hypothetical?

A      Yes.

Q      And do all, and do these jobs exist throughout the various regions in the economy?

A      They do.

Q      And would all the employers in all the jobs you've named actually permit these accommodations and limitations?

A      Yes.

Q      And what's the basis for your opinions?  First, a very few words on your credentials.

12

A        I've been in vocational rehabilitation as a counselor since 1972.  That involves assessing individual with disabilities and placing them in employment where possible.

Q        Have you personally watched sedentary, unskilled office clerks at work?

A        Yes.

Q        Have you personally watched sedentary, unskilled production workers at work?

A        Yes.

Q        Have you personally watched sedentary, unskilled inspectors/testers at work?

A        Yes.

Q        And is there any discrepancy between your opinions and the DOT standards for the requirements of the jobs you named?

A        No, sir.

ALJ:    Well, we'll pass Exhibit 14E to counsel.  And, counsel, your witness.

ATTY: Nothing further on the checked items here, Your Honor.

ALJ:    Very well.  Counsel, do you have anything further in testimony or closing?

ATTY: Nope.

ALJ:    Okay, well then in that case I will pull everything together, get a decision out as soon as I can.  I appreciate you all coming to help me understand the situation.  I wish you a safe trip back home.  Good day.

CLMT:Thank you.

(The hearing closed at 4:17 p.m., on September 26, 2005).

13

Clearly, the vocational expert identified broad categories of work such as office clerk, production, and inspector/tester.  In addition, she went on to cite specific jobs within these categories and describe various tasks and responsibilities that may be involved.  For instance, she testified that office clerk positions might entail "preparing mailing, perhaps sorting incoming mail, collating, documentation preparation"; that an inspector/tester might "use either a fixed gauge or could weigh finished products to be sure they meet production requirements"; and that production work may involve "assembling small items, cosmetics for example or other small utensils for shipment out" (Tr. 188).  And contrary to Ms. Beinlich's assertion, the *DOT* contains several sedentary, unskilled jobs representative of the work identified and described by the vocational expert, including Weight Tester (No. 539.485-010), Atomizer Assembler (No. 706.684-030), Lamp-Shade Assembler (No. 739.684-094), Fishing-Reel Assembler (No. 732.684-062), Dial Marker )No. 729.684-018), and Tube Operator (No. 239.687-014).

When asked at the hearing whether there was "any discrepancy between your opinions and the DOT standards for the requirements of the jobs you named," the vocational expert answered, "No, sir."  (Tr. 189).  Neither Ms. Beinlich nor her attorney, either at the hearing or in a post-hearing brief, challenged her response.  Therefore, when the ALJ issued his decision, all that he had before him was the vocational expert's uncontradicted expert testimony that there were unskilled, sedentary positions that Ms. Beinlich could perform, and that these positions were consistent with those described in the DOT.  This testimony provided substantial evidence for the ALJ's Step 5 finding.

14

Plaintiff argues that the ALJ had further responsibilities in this case to explain a conflict that did not exist in this case between the testimony of the expert and DOT.  She cites us to Prochaska v. Barnhart, 454 F.3d 731 (8th Cir. 2006).  In that case, the Seventh Circuit advises only that the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds to DOT and elicit a reasonable explanation for any discrepancy on this point.  The testimony set forth above and the record before defendant discloses no discrepancy exists.  The ALJ was within his rights to rely solely on the VE's testimony.  *Conn v. Secretary of HHS*, 51 F.3d 607, 610 (6th Cir. 1995).

Upon a ***de novo*** review of the record, the Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case.

Accordingly, the Court **ADOPTS** the Recommendation of the United States Magistrate Judge.  The decision of the Commissioner is in accordance with the law and **SUPPORTED BY SUBSTANTIAL EVIDENCE** and is **AFFIRMED.**

This case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

                s/Herman J. Weber
            Herman J. Weber, Senior Judge
             United States District Court